Agnes, Peter W., J.
This is a civil action in which the third-party plaintiffs, the Nguyens, seek indemnification from the third-party defendant, Charter Communications Entertainment, I, LLC, (“Charter”) for the alleged injury of a tenant at a multiple dwelling unit owned by the Nguyens. The third-party plaintiffs rely on G.L.c. 166A, §22 which they maintain creates a right of indemnification on their behalf. Both the third-party plaintiff and the third-party defendant have filed cross motions for summary judgment under Mass.RCiv.P. 56. Because there are no material facts in dispute and the third-party defendant is entitled to judgment as a matter of law, the Third-Party Defendant’s motion is ALLOWED and the Third-Party Plaintiffs’ motion is DENIED.

BACKGROUND

The essential facts are not in dispute. The Nguyens own a multiple dwelling unit in the city of Worcester where the plaintiff, Kevin Ligouri, was allegedly injured on October 17, 2003. Mr. Ligouri’s amended complaint alleged that he was injured when the walker he was using to assist him down an outside staircase from his first floor apartment became entangled in cable wires installed by Charter causing him to fall. Mr. Ligouri brought an action against the Nguyens for his injury and his wife, Heidi Ligouri, also sued for loss of consortium. The Nguyens then sued Charter for (1) indemnification and (2) contribution[1] under G.L.c. 166A, §22. Neither the plaintiffs, nor the third-party plaintiffs contacted Charter prior to Mr. Ligouri’s accident to complain of safety concerns regarding the wires. The question before the court does not concern the merits of the underlying tort action. Instead, the motions call upon the court to examine G.L.c. 166A, section 22 and to determine its meaning.

DISCUSSION

A. Role of the court in statutory interpretation.

The dispute in this case centers on the interpretation of G.L.c. 166A, §22 which states in relevant part:
(PARAGRAPH 2.) An operator who affixes, or causes to be affixed, CATV [Cable Antenna Television] system facilities to the dwelling of a tenant . . . shall indemnify the landlord of such dwelling for any damage arising out of such actions, and shall not interfere with the safety, functioning, appearance or use of such dwelling . . .
(PARAGRAPH 7.) An owner whose property is injuriously affected by occupation of the ground or air or otherwise by such construction of CATV system facilities may recover damages therefor from the operator pursuant to chapter seventy-nine . . .
(PARAGRAPH 8.) A cable television operator shall indemnify the landlord for any damages caused by the installation, operation or removal of cable television facilities. An owner of property may require that the installation of cable television facilities confirm to such reasonable conditions as are necessary to protect the safety, functioning and appearance of the premises, and the convenience and well being of other tenants.
When a court is called upon to interpret a statute, its duty is to give the words used by the Legislature their plain and ordinary meaning unless the Legislature has supplied definitions of those terms, or a different meaning is required due to the context of their use, other statutes or technical nature of the terms. See G.L.c. 4, §6, third; Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977).

B. Plain meaning rule.

The third-party plaintiffs maintain that the phase “should indemnity . . .” as it appears in paragraph 2 of G.L.c. 122A, §22 has a plain and straightforward meaning that landlords are to be held harmless for any damage suffered by a tenant or anyone else based on an injury involving a cable TV system. For several reasons, this interpretation is not sound. The plain meaning rule does not mean that the words of a statute should be read in isolation from the rest of the statute, or that one section of a statutory scheme should be read apart from the entirety of the scheme. See Polaroid Corp. v. Comm’r of Revenue, 393 Mass. 490, 497 (1984).
The meaning of the word “damage” as used in G.L.c. 166A, §22, paragraph two, is illuminated by looking at the context of that word as used in other provisions of the General Laws. Throughout the General Laws, the word “damage” in the singular is used when the provision refers to the actual injuries to property or people, while the word “damages” in the plural refers to the money to be paid by a party as compensation for the injuiy to the property or person for which that party is liable.[2] One example, G.L.c. 106, §2A-504 (Liquidation of Damages) illustrates the point. The first paragraph of the section begins with a provision that states in part that “Damages payable by either party for default, or any other act or omission, including indemnity for . . . loss or damage to lessor’s residual *59 interest may be liquidated in the lease agreement. . Mass.Gen.Laws c. 106 §2A-504 (emphasis added). “Where words are used in one part of a statute in a definite sense, they should be given the same meaning in another part of the statute.” Beeler v. Downey, 387 Mass. 609, 617 (1982). The same is true when words in certain statutes have been given a definite sense and are used in other statutes.
Additionally, if the legislature truly intended to indemnify landlords for any damages arising from the mere fact of having cable installed at their premises, section twenty-two would likely have been modeled after section five of the same chapter, which establishes the licensing conditions imposed on CATV operators. Section five states in relevant part:
[Each licensee] shall indemnify and hold the city or town harmless at all times during the term of the license from any and all claims for injury and damage to persons or property, both real and personal, caused by the installation, operation, or maintenance of any structure, equipment, wire or cable authorized to be installed pursuant to the license.
Here, there is no doubt that the Legislature intended the CATV operators to indemnify the cities and towns in which their operations existed. Therefore, if the Legislature had intended that an operator of CATV system facilities to indemnify landlords in the way the Nguyens claim, the Legislature would have stated just that.
Furthermore, the adjective “such” in section twenly-two modifies the word “actions” in the clause at issue in the present case. The actions being referred to are the verbs “... qffix[ing], or caus[ing] to be affixed CATV system facilities to the dwelling of a tenant...” (Emphasis added.) The plain language rule, therefore, demands that the damage that a landlord is to be indemnified for is the damage that arises from the action of the installation, not for damage that may occur from the future results of CATV system facilities being present on the premises.
(Paragraph 7.) An owner whose property is injuriously affected, by occupation of the ground or air or otherwise by such construction of CATY system facilities may recover damages therefor from the operator pursuant to chapter seventy-nine . . .
The above paragraph is not a provision to allow the landlord to recover damages when another is injured by cable installation. Rather, it is the mechanism by which the landlord can recover if his property has been taken by eminent domain. Chapter seventy-nine deals with compensation for takings. The present case does not involve a claim by the landlord that his property has been taken for public use, therefore, paragraph seven is not applicable.
(Paragraph 8.) A cable television operator shall indemnify the landlord for any damages caused by the installation, operation or removal of cable television facilities. An owner of property may require that the installation of cable television facilities conform to such reasonable conditions as are necessary to protect the safety, functioning and appearance of the premises, and the convenience and well being of other tenants.

C. The role of legislative history in statutory interpretation.

“It is well established that, although the title of an act cannot control the plain provisions of the act, it may aid construction of ambiguous clauses.” Am. Family Life Assurance Co. v. Comm’r of Ins., 388 Mass. 468, 474 (1983). The court takes notice of the fact that when section twenty-two was first introduced by act in 1975, the act was entitled An Act relative to the installation of cable television facilities (emphasis added). At the time, paragraph two was essentially the same as it stands today, however instead of stating “. . . dwelling of a tenant . . as it does today, the words used were “. . . property of another . . .” The section was changed in 1977 by an act entitled An Act further regulating the affixing of cable television systems on properties occupied by tenants to reflect the change in wording mentioned above (emphasis added).
Then, in 1985, the section was again changed in an act entitled An Act further regulating the installation of cable television system facilities (emphasis added). This change was made to address the problem of landlords not allowing CATV installation on their property and the regulatory takings issues that followed.[3] The section was amended to provide for compensation to the landlords who advanced an “unconstitutional takings” argument and to ensure tenants’ access to cable television facilities. Paragraph eight, therefore, was added to ameliorate the concerns of the landlords if their property had been damaged during the installation, operation or removal of cable television services which they had no right to deny. In 1991 and 1996, the section was again amended to address additional regulatory takings concerns. See, e.g., Loretto v. Teleprompter Manhattan Catv Corp., 458 U.S. 419 (1982); Amsat Cable P’ship v. Colonial Point Phase I Realty, No. 93-2764, 1995 Mass.Super.LEXIS 863, at *8-* 10 (Super.Ct., Dec. 5, 1995) [4 Mass. L. Rptr. 499].
Thus, the legislature has amended section twenty-two four times since its introduction in 1975 and at no time has the legislature found it necessary to clarify the language concerning the indemnification of landlords. When the Legislature reenacts statutory language without making a change to the language, “it is a principle of statutory construction that no change is intended in [the statute’s] meaning or scope.” Mass. Mutual Life Ins. Co. v. Comm’r of Corps. and Taxation, 363 Mass. 685, 691 (1973). The language at issue in the present case has remained “. . . shall indemnify *60 the landlord of such dwelling for any damage arising out of such actions . . .”
D. Statutory construction. The final consideration in making this determination is whether the reading of G.L.c. 166A, §22 advanced by the third-party plaintiff makes sense or leads to an absurd result. See Bell v. Treasurer of Cambridge, 310 Mass. 484, 489 (1941) (reading of statute that leads to absurd result not adopted where language lends itself to sensible interpretation). It makes no sense to assume our Legislature intended to abrogate, without explanation, centuries of common law that impose responsibility on tortfeasors for the harm caused by their negligence and shift it to a third party such as a CATV installer. If the injured party in the case suffered harm as a result of the landlord’s negligence, there is no policy reason in or underlying G.L.c. 166A that explains why the landlord should be held harmless.
“The principles and rules governing the construction of a statute are well established. It is settled that a statute ‘as a whole ought, if possible, to be so construed as to make it an effectual piece of legislation in harmony with common sense and sound reason . . ” Johnson’s Case, 318 Mass. 741, 746 (1945), quoting Morrison v. Selectmen of Weymouth, 279 Mass. 486, 492 (1932). Here, common sense and sound reason would necessitate that the provision covers damage as a result of installation or removal of cable television services, or damage caused by operating the cable television services. If the plaintiff in the action believes Charter is responsible for his fall, the proper course is to bring action against the company directly.

ORDER

For the foregoing reasons, the Third-Party Defendant’s motion is ALLOWED and the Third-Party Plaintiffs’ motion is DENIED.

According to the third-party plaintiffs’ Memorandum in Opposition to the Third-Party Defendant’s Motion for Summary Judgment, “the Nguyens do not seek to recover damages from Charter based upon a theory of negligence, but rather seek to enforce a statutory duty of indemnification.” Furthermore, at oral argument on the motion for summary judgment, the Nguyens did not advance a theory of contribution. For these reasons, the claim for contribution is not considered.

See for example M.G.L.c. 231, §60F. Award of damages, elements and itemization of amounts; c.229, §1. Damages for death from defective ways; persons entitled; c.90, §32El/2. Rental agreements; collision damage waivers; notices; exclusions; penalties.

See, e.g.,Greater Worcester Cablevision, Inc. v. Carabetta Enterprises, 682 F.Sup. 1244, 1259 (1985) (“[T]he Legislature did not contemplate a compensated taking of private property as a consequence of the mandatory access provisions”).