*Northern District*

#6333

## CATHERINE CROWLEY

### v.

## MAURICE TESSLER, d/b/a

*Present*: Brooks, P.J., Connolly, Yesley, J.J.

Case tried to *Troy, J.* in the Municipal Court of the Dorchester District  R-1771

Brooks, P.J. *This is an action of tort to recover for personal injuries* sustained by plaintiff on the premises under control of defendant. Defendant answered by way of general denial, contributory negligence and assumption of risk.

*Testimony at the trial was as follows*: Plaintiff entered defendant's premises about 2:45 P.M. on May 2, 1964 in order to make a purchase. She entered by one of three doors facing Dorchester Avenue. After passing through the door, she turned left, and her foot went out from under her and she fell.

The photograph introduced in evidence discloses two glass doors close together serving as entrances to defendant's premises, one leading to the pharmacy section of the store, the other to the general merchandise section. There was a difference in elevation between the two sections. Plaintiff testified that the pharmacy section was a foot lower than the general merchandise section. The manager's estimate of the difference in level was three inches. The photograph indicates that the manager's estimate was the more accurate of the two.

Instead of a step to connect the two levels, there was a ramp covered with rubber mats. This ramp plaintiff estimated to be a yard in width. The photograph also shows a strip of rubber matting on each side of the ramp. Judging from the photograph, it is fairly inferable that plaintiff's estimate of a yard included the

side strips. On these adjoining strips in six different places the word "STEP" was painted in large white letters. To proceed from one section to the other a customer would have actually to walk over one or two of these "STEPS" or unless unduly broad of beam, between two of them.

*There was testimony from defendant,* owner, that he saw plaintiff enter the store "hurrying and almost running". He saw her turn to the left as she entered the store and fall to a sitting position as she went down the ramp leading from the pharmacy to the general merchandise section.

At the conclusion of the evidence defendant duly filed Requests for Rulings as follows:

1. The evidence does not warrant a finding that the defendant, his agents or servants, was (sic) negligent.

2. The evidence does not warrant a finding other than that the negligence of the plaintiff contributed in whole or in part to cause the alleged injuries and damage.

3. The evidence does not warrant a finding that the negligence of the defendant proximately caused the alleged injuries and damage.

4. As a matter of law the defendant breached no legal duty owed by him to the plaintiff.

The court denied request numbered 1.

The court denied request numbered 2 and further found as follows: "I see no negligence on the part of plaintiff".

The court denied defendant's request numbered 3 and further found that "the defendant allowed the condition to exist dangerous to patrons".

The Court denied defendants's request numbered 4 and further found ''a breach of duty of due care. I find as a fact a condition was allowed to exist, said condition being a hazard to the safety of the defendant's customers. This condition existed for a period of time sufficient for the defendant to have known of its existence and have it remedied; failure to do so constituted a breach of duty on the part of the defendant to protect its customers.''

The court found for plaintiff in the amount of $1875.

Defendant claims to be aggrieved by the denial of its requests for rulings numbered 1, 2, 3 and 4 and by the finding for plaintiff.

The testimony discloses no satisfactory explanation as to why plaintiff fell. It could be conjectured that in making the sharp left turn, her feet went out from under her. Plaintiff's theory is that the drop in level between the pharmacy and the general merchandise sections of the store was the cause of her fall, and that the duty of defendant being to keep the premises in a safe condition, he is legally responsible for the injury.

In the first place, the law recognizes that stores, among other public places, occasionally have to have different levels which are connected either by steps or a ramp. The maintenance of such a condition is not necessarily a legal liability.

The law on this subject is set forth in the

leading case of *Ware* v. *Evangelical Baptist Benevolent and Missionary Society of Boston,* 181 Mass. 285 at 286. The following excerpt from the opinion is usually quoted in similar cases as follows:

> "It is matter of common observation that in entering and leaving stores, halls, railway car stations and platforms, office buildings, and other buildings and places and private houses, adjoining surfaces are frequently at different levels, and the difference in level has to be overcome by one or more steps of greater or less height or by some other device. The same thing happens in the interior of buildings and structures. We cannot think that such a construction is of itself defective or negligent. There is nothing in the nature of things which requires that the floor of a room which is entered from a hall or corridor, especially in a building like the Tremont Temple Building, should be on the same level as that of the hall or corridor. Such may be the more usual and common construction, but there is nothing . . . which requires it to be so at the peril of being regarded as defective or negligent, if it is not, and if suitable safeguards are not (sic) adopted to warn and protect those invited there."

Part of the opinion above set forth was quoted in *Gurll* v. *Massasoit Greyhound Association, Inc.,* 325 Mass. 76, 78 where the court also said:

> "One entering premises where a race track is maintained cannot reasonably expect to find all parts of the premises at the same level or expect that there will not be steps or other devices between the levels. There was no evidence of any defect in the step itself at the place where plaintiff fell, and we are of the opinion that neither the placing of a step at that point nor the type of construction can be said to be negligent."

While photographs are occasionally mislead-

ing and not too reliable, the photograph in evidence in this case certainly does not indicate any violent or abnormal change of level nor, in fact, a defect of any kind. Such conditions have been recognized as legally permissible in the cases above cited.

In the second place, this case would seem to come within that class of cases where the alleged "defect" is quite obvious to anybody with eyes open. Not only is it plainly a ramp, but the change of level is adequately labeled with the imprinting of the word "STEP". *O'Neil* v. *W.T. Grant Co.*, 335 Mass. 234; *Letiecq* v. *Denholm & McKay Co.*, 328 Mass. 129 and cases cited. *Fish, Adm.* v. *Gilchrist Co.*, 336 Mass. 756; *Mudge* v. *Stop & Shop, Inc.*, 339 Mass. 763.

The Trial Court was wrong in the first place in assuming that the condition of the premises caused plaintiff to fall and in the second place, in finding that defendant allowed a condition to exist dangerous to patrons and therefore a breach of duty of due care. In other words, the court was in error in denying defendant's requests for rulings numbered 1, 3, and 4.

**Finding for plaintiff is to be vacated and a finding entered for defendant.**

WALTER J. CONNELLY ESQ.
　for the Plaintiff
JOSEPH GARGON ESQ.
　for the Defendant